UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ELLEN MCCORMICK,

                        Plaintiff,

       -against-                                 **ORDER TO SHOW CAUSE**
                                                                     18-CV-916-ENV-SJB

PHINIZY & PHEBE HANDMADE LLC,

                        Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

On February 12, 2018, Plaintiff Ellen McCormick ("McCormick") commenced this wage-and-hour action against Defendants Phinizy & Phebe Handmade LLC (the "Company" or "Defendant Company"), Crista Freeman ("Freeman"), and Jess Eddy ("Eddy") (collectively, "Defendants"), alleging claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), N.Y. Lab. Law § 663 *et seq*. The claims against Eddy were voluntarily dismissed without prejudice on May 12, 2020, (S*ee* Notice of Dismissal dated May 12, 2020, Dkt. No. 44), and the claims against Freeman were dismissed with prejudice on July 16, 2020, (Stipulation of Voluntary Dismissal dated Jul. 16, 2020, Dkt. No 51). After the Defendant Company failed to appear, McCormick file a motion for a default judgment. (*See* Mot. for Def. J. dated Nov. 1, 2019 ("Mot."), Dkt. No 32). The Honorable Eric N. Vitaliano referred the motion to the undersigned.

For the reasons stated below, McCormick is ordered to show cause by **August 24, 2020** why the Court should not recommend a denial of the default judgment motion for failure to state a FLSA claim. In the alternative, in light of the discussion below, McCormick may withdraw her motion by **August 24, 2020**, file an Amended

Complaint by **September 7, 2020**, re-serve the Defendant Company with the amended complaint, and seek a new certificate of default if the Company again fails to respond.

## DISCUSSION

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2020) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." (footnote omitted)).

To establish liability under FLSA, the complaint must allege an employee-employer relationship between the plaintiff and defendant, 29 U.S.C. §§ 206(a), 207(a)(1); it must allege the employer or employee's work involved degree of interstate commerce, the "coverage" requirement, *id.*; and "where the plaintiff alleges violations of

the FLSA's minimum . . . wage provisions, the complaint should, at least approximately, allege the hours worked for which these wages were not received." *Zhong v. Aug. Aug. Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007); *see also Zokirzoda v. Acri Cafe Inc.*, No. 18-CV-11630, 2020 WL 359908, at *2 (S.D.N.Y. Jan. 22, 2020) ("To state an FLSA minimum wage claim, it is sufficient for a plaintiff to allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period.").

McCormick's Complaint does not establish the last two elements because (1) the allegations are insufficient to establish that McCormick or the Company engaged in interstate commerce, and (2) the allegations fail to make out a FLSA minimum wage claim, but rather suggest this is a breach of contract case and McCormick is exempt from FLSA.

1. <u>FLSA Coverage</u>

FLSA's minimum wage and overtime requirements apply only where employees are "engaged in commerce or in the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage"). 29 U.S.C. §§ 206(a), 207(a)(1); *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009); *see also Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018), *report and recommendation*, 2018 U.S. Dist. LEXIS 156601, at *1 (Sept. 12, 2018). .

McCormick attempts to establish both individual and enterprise coverage but fails to do establish either.

As to individual coverage, "[t]o determine whether an individual employee is engaged in commerce, courts conduct a fact-specific inquiry into the employment actions of each and every employee asserting a claim under the Act." *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009). "Employees are 'engaged in commerce' within the meaning of [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof." 29 C.F.R. § 779.103. "[T]his includes every employee employed in the channels of such commerce or in activities so closely related to this commerce, as to be considered a part of it as a practical matter." *Id.* This inquiry must be conducted on default. *See Payamps*, 2018 WL 3742696, at *4–5.

The Complaint merely states that "McCormick's title was 'Business Development,'" (Compl. ¶ 20); that she worked for an "ice-cream company," (*id.* ¶ 9), and that "[a]t all relevant times, Plaintiff was a covered individual within the meaning of the 29 U.S.C. §§ 206(a) and 207(a)," (*id.* ¶ 37). These vague and conclusory allegations—that provide no information at all about McCormick's work or duties—do not allow for a reasonable inference that she was engaged in commerce. *See, e.g.*, *Payamps*, 2018 WL 3742696, at *5 ("This is not a difficult undertaking—and the barest one—but it is absent. The Amended Complaint could . . . have said something—the faintest pleading would have likely sufficed—about the deliveries [of goods]. . . . [N]othing is said about the [servicing of] customers. [T]he customer-nexus of Plaintiffs' activities are too vague or unspecified to establish they were 'engaged in commerce.' As to any equipment used or goods stocked, nothing is said about whether such equipment

4

or inventory originated out of state. Without more, the Court cannot conclude the Amended Complaint's bare allegation about goods can create an inference engagement in commerce."); *Hernandez v. Main Glatt Corp.*, No. 12-CV-986, 2014 WL 1310287, at *3 (E.D.N.Y. Mar. 14, 2014) ("As to individual coverage, there are no allegations to suggest that Fernandez engaged in commerce, i.e., that he personally engaged in any 'trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.' Nor are there any allegations that he produced goods for commerce within the above definition of commerce." (citation omitted)), *report and recommendation adopted*, 2014 WL 1310291 (E.D.N.Y. Mar. 31, 2014) (denying motion for default judgment).

As for enterprise coverage, on default, a plaintiff's allegations are sufficient to subject a defendant to FLSA liability as long as one may reasonably infer that a business was an "enterprise engaged in commerce." *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015) (citing *Garcia v. Badyna*, No. 13-CV-4021, 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014)). FLSA defines "enterprise engaged in commerce or in the production of goods for commerce," in relevant part, as an enterprise that

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

29 U.S.C.A. § 203(s)(1)(A). "[T]o properly allege . . . enterprise coverage, [a plaintiff] need not do much. Aside from stating the nature of his work and the nature of [her

5

employer's] business, [s]he must provide only straightforward allegations connecting that work to interstate commerce." *Payamps*, 2018 WL 3742696, at *4 (quoting *Sciacca v. Vectorworks Marine*, LLC, No. 12-CV-1255, 2013 WL 656325, at *4 (M.D. Fla. Feb. 1, 2013), *report and recommendation adopted*, 2013 WL 655402 (Feb. 22, 2013)).

McCormick's Complaint states that "Defendant Company earns in excess of $500,000 per year in interstate commerce" and "is an ice-cream company which sells its products to stores nationwide." (Compl. ¶¶ 8–9; *see also* Mem. in Supp. of Mot. dated Nov. 1, 2019 ("Mem."), Dkt. No. 32 at 5–6 ("Phinizy & Phebe as alleged is engaged in interstate commerce as it sells its products to stores nationwide and earns in excess of $500,000 per year in interstate commerce. Therefore, there is an employee-employer relationship under the FLSA." (citation omitted)). While these allegations establish the $500,000 element, they provide insufficient information about whether any employees of the company handle, sell, or work on goods that have travelled in interstate commerce. In fact, the allegation that the Company sells products nationwide does little more than parrot the statutory language with synonyms (and it barely does that), and says nothing about the employees, including whether any employee is engaged in commerce or working on or selling goods that move in commerce. Such allegations are insufficient to establish enterprise coverage. *See Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310, 2016 WL 1359218, at *4 (E.D.N.Y. Mar. 17, 2016) ("[R]equiring non-conclusory allegations is more consonant with applicable case law concerning pleading requirements, and . . . does not frustrate the FLSA's remedial purpose to require a plaintiff seeking the statute's protection to explain in her pleading just what it is about her employer's business that brings it within the law's ambit."), *report and recommendation adopted*, 2016 WL 1337310 (Apr. 5, 2016); *e.g., Hernandez*, 2014 WL

6

1310287, at *3 ("With respect to enterprise coverage, the allegations are equally deficient. As an initial matter, the complaint simply cites entire textual sections of the FLSA, followed by conclusory allegations tracking the statute that are devoid of any factual support. . . . There is nothing to indicate that the defendants employ any worker other than the plaintiff, much less that any other employees are regularly engaged in work of the type necessary to establish enterprise coverage.").

**Thus, McCormick is ordered to show cause why the default judgment motion should not be denied and the Complaint dismissed for failure to establish either individual or enterprise coverage.** *See, e.g.*, *Saunders v. Amplus Air Conditioning Contractor, Inc.*, No. 19-CV-62450, 2020 WL 1452364, at *6 (S.D. Fla. Mar. 25, 2020) ("[T]he Complaint fails to set forth sufficient facts to establish the 'interstate commerce' component of an FLSA claim under either theory of coverage. As to individual coverage, the Complaint is factually lacking in allegations of how Plaintiff himself directly and regularly affected interstate commerce. The allegations under an enterprise coverage theory fare no better. Here, the Complaint neither alleges generally the number of workers employed by Defendants nor sets forth facts for the Court to reasonably infer that two or more employees were engaged in interstate commerce.").

2. Failure to State a Minimum Wage Claim

"FLSA protects employees by requiring that employers pay them minimum wage[.]" *Walker v. The Interfaith Nutrition Network, Inc.*, No. 14-CV-5419, 2015 WL 4276174, at *3 (E.D.N.Y. July 14, 2015). "FLSA sets a national 'floor' in terms of working conditions, in order to protect workers from the substandard wages and excessive hours

7

that might otherwise result from the free market." *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 57 (2d Cir. 1998).

"Parties may, of course, contract for additional rights above those guaranteed by the statute." *Id.* As such, "the existence of the FLSA does not convert every suit involving the breach of an employment contract into a federal case." *Id.* Thus, a complaint fails to state a FLSA minimum wage claim where all that is alleged is a failure to pay an employee's above-minimum wage salary; instead, such a claim amounts to a breach of an employment contract claim. *See James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 321 (E.D.N.Y. 2012) ("To the extent the Amended Complaint can be read as asserting a claim for 'unpaid wages, commissions and bonuses,' such a claim will be treated as part of plaintiff's state law claims for breach of contract and unjust enrichment." (citation omitted)).

To view such allegations otherwise would permit a salaried employee—with an employment agreement with an employer entitling her to an amount that is more than minimum wage—to transform what is otherwise a state contract claim into a federal FLSA claim when her employer stops paying her pursuant to the agreement. *See Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264, 1271 (11th Cir. 2016) ("What Mr. Pioch is essentially trying to do is assert a state-law breach of contract claim, for his agreed-to hourly rate, through the FLSA."). "Under settled law, the FLSA neither converts an employer's contract breach into a violation of federal law, nor generally federalizes disputes between employers and employees." *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 110–11 (S.D.N.Y. 2015)

Similarly, where no FLSA minimum wage claim exists, no FLSA retaliation claim could either. *See, e.g., id.* (finding no FLSA retaliation claim where employee

8

complained about docked wages because the employees were not asserting FLSA rights); *Monroe v. J.H.O.C., Inc.*, No. 18-CV-299, 2019 WL 2579238, at *3 (D. Conn. June 24, 2019) ("Complaints lodged on matters not governed by the FLSA, including contractual disputes, cannot be the basis of a retaliation claim thereunder."), *appeal dismissed* (Nov. 8, 2019).

Here, McCormick's FLSA wage claim seeks the amount of wages she expected to be paid, based on her salary of $55,000 per year, during the months she was not paid after the Defendant Company stopped paying her. (Compl. ¶¶ 27–31, 35–44; *see also* Mem. at 6–7). She also alleges a FLSA retaliation claim based on the termination in payments. (Compl. ¶¶ 32–34, 52–57; *see also* Mem. at 6). She includes no allegations about the number of hours worked per week; she does not state she worked either a standard 40-hour work week, or more, or less. Instead, because from May 26, 2017 to September 28, 2019, McCormick was not paid at all based on her contractual salary of $55,000 per year, she says she was not paid a minimum wage. She seeks "$19,038.42 in actual damages for Defendants' violations of the FLSA and NYLL" based on the salary that Defendants agreed to pay her. (Mem. at 5–6).

A failure to include allegations about hours worked alone is sufficient to invalidate a FLSA claim. *See, e.g.*, *Bonn-Wittingham v. Project OHR, Inc.*, 792 F. App'x 71, 75 (2d Cir. 2019) ("The complaint . . . fails to set forth necessary factual detail to support the inference of the additional working hours necessary for Plaintiffs-Appellants' effective hourly wage to drop below the minimum wage. That deficiency requires dismissal of Plaintiffs-Appellants' minimum wage claims."); *Selimovic v. S. Side Assocs. LLC*, No. 16-CV-298, 2019 WL 1386740, at *2 (E.D.N.Y. Mar. 27, 2019) ("Abdel Selimovic does not allege how many hours he worked per week. As a result, the

9

Selimovics failed to adequately plead an FLSA violation."); *Oliver v. Rio Acquisition Partners, LLC*, No. 18-CV-1794, 2019 WL 801952, at *1 (S.D.N.Y. Feb. 21, 2019) (dismissing FLSA claim where complaint "failed to allege how many hours the plaintiff worked for Defendant in a given week"); *Serrano v. I. Hardware Distributors, Inc.*, No. 14-CV-2488, 2016 WL 1441469, at *3 (S.D.N.Y. Apr. 7, 2016) ("The initial minimum wage claims were similarly deficient because there were no allegations regarding the number of hours actually worked per week. The Amended Complaint cures both defects by alleging the specific hours that Plaintiffs worked each week.").

McCormick's Complaint is deficient on this issue. Between May 26, 2017, and September 28, 2017, McCormick worked 18 weeks and, assuming she did not have any days off for holidays or otherwise, at a standard five days per week and eight hours per day, McCormick is asking for $26.44 per hour, well over minimum wage.[1] To consider McCormick's total earnings spread over the entirety of her weeks worked in 2017, *i.e.* considering the total amount she was paid up until May 26, 2017 and dividing it by her total time worked from January 1 through September 28, 2017, she was still being paid $14.24 per hour, over the applicable minimum wage. *See Pioch*, 825 F.3d at 1272 ("Again, even without receiving his final three weeks of pay, Mr. Pioch's earnings for his final year are well above the benchmark salaries contemplated for both salaried and hourly exempt computer employees under the FLSA.").

In other words, McCormick seeks to recover a salary—well-above minimum wage under FLSA or NYLL for a forty-hour work week—based on a contract that exceeds

---

[1] At the time of McCormick's employment the federal minimum wage was $7.25 an hour, 29 U.S.C. § 206(a)(1)(C), and the New York state minimum wage was either $10.50 or $11.00 per hour depending on whether the Company was a large or small employer in New York City, N.Y. Lab. Law § 652(1)(a)(i), (ii).

10

FLSA and NYLL.  This is not a FLSA claim.  *See Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1997) ("This is an unusual interpretation of the FLSA, one that would convert an entire category of state contract law actions into federal labor suits. . . . [W]e reject the proffered interpretation."); *Donovan v. Agnew*, 712 F.2d 1509, 1517 (1st Cir. 1983) ("[T]here is no question that the employees here were guaranteed by contract a 'rate [of salary] not less than $155 per week.'  That contractual obligation was simply not met during the final two to three weeks of the company's operation. . . . We find no basis for holding that Congress intended to extend the minimum wage protections of the Act to highly salaried employees whenever their employment contracts are breached.").

Thus, as alleged, McCormick's complaint merely states her employer failed to pay her a salary pursuant to their agreement, not a FLSA claim.  *See, e.g.*, *Shetty v. SG Blocks, Inc.*, No. 20-CV-550, 2020 WL 3183779, at *5 (E.D.N.Y. June 15, 2020) ("The FLSA protects workers by ensuring that they are paid a minimum wage, and that non-exempt workers are properly compensated for work in excess of 40 hours per week.  Under the FLSA, a plaintiff cannot recover wages other than minimum wage or legally required overtime compensation. . . . FLSA does not apply to Shetty's claim that he was not compensated in salary and bonuses far exceeding minimum wage.  Thus, Shetty's first cause of action for unpaid wages under the FLSA is dismissed." (citations omitted)); *Solie v. Health Care@Home LLC*, No. 19-CV-5399, 2020 WL 1821257, at *5 (D. Ariz. Apr. 10, 2020) ("[T]he [complaint] still fails to demonstrate Plaintiffs were paid below the minimum wage.  Plaintiffs had salaries ranging from $80,000–$108,000 and rates of $50 to $120 per occupational visit.  Thus, a failure to pay

11

Plaintiffs' 'earned wages' does not, in light of their higher salaries, translate into a failure to pay minimum wages.").

Relatedly, McCormick's Complaint implies that she is exempt from FLSA. That is, McCormick's allegations and default judgment filings raise a question of whether McCormick falls within the "bona fide executive, administrative, or professional" exemption of FLSA. 29 U.S.C. § 213 (a)(1); 29 C.F.R. § 541.100, *et seq.* (2017). While exemptions are affirmative defenses, *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 (2d Cir. 2013), courts in this District have considered exemptions on default when, like here, the plaintiff's filings themselves implicate the exemption. *See, e.g.*, *Ghosh v. Neurological Servs. of Queens*, No. 13-CV-1113, 2015 WL 431807, at *3 (E.D.N.Y. Feb. 3, 2015) (denying default judgment because plaintiff was "a bona fide professional as the FLSA defines the term, and not covered by the statute's minimum-wage protections").

Administrative workers are exempt from FLSA's demands. *See Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-CV-6469, 2018 WL 5456654 at *7 (E.D.N.Y. Sep. 8, 2018) (citing 29 U.S.C. § 213(a)(1)). As of 2017, an employee that worked in an "administrative capacity" was:

> (1) Compensated on a salary . . . basis . . . at a rate per week of not less than [$913] . . . ;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. §§ 541.200(a), 541.600(a) (2017). "Salary basis" means "the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not

subject to reduction because of variations in the quality or quantity of the work performed." § 541.602(a); *see also Siji Yu v. Knighted, LLC*, 811 F. App'x 55, 58 (2d Cir. 2020) (citing 29 C.F.R. § 541.601) (finding an employee may be exempt as a matter of law if there is no genuine dispute that (1) the employee received the request annual salary; "(2) 'customarily and regularly' performed at least one of the exempt duties of an administrative or professional employee; and (3) exclusively performed non-manual office work.").

The Complaint states that "Plaintiff's title . . . was 'Business Development'" and "Plaintiff's annual wage at the end of her employment was $55,000," or $1,057.69 per week. (*See* Compl. ¶¶ 20–21). She was paid twice per month. (*Id.* ¶ 22). McCormick's memorandum of law describes her as a "salaried employee." (Mem. at 6). These allegations suggest McCormick may fall under the administrative exemption. *See, e.g.*, *Krohn v. Park Ambulance Serv., Inc.*, No. 13CV0768, 2015 WL 12591672, at *1 (S.D.N.Y. Apr. 23, 2015) ("[C]ontradictory evidence suggest[s] that Gurvich's job responsibilities included marketing, business development, and supervising the Russian program in its entirety. Such evidence, if accepted, may qualify Gurvich as an exempt employee under FLSA's administrative exemption."). Thus, since she did not lose her exempt status when she stopped receiving her salary, McCormick would never have been entitled to FLSA protections.

Without a FLSA claim, and only a state breach of contract claim and NYLL claims, the Court would recommend dismissal of the complaint in its entirety. *See, e.g.*, *Cangelosi v. Gabriel Bros.*, No. 15-CV-3736, 2015 WL 6107730, at *3 (S.D.N.Y. Oct. 15, 2015) ("The 'values of judicial economy, convenience, fairness, and comity' that the Court must consider in deciding whether to exercise supplemental jurisdiction counsel

13

in favor of doing so with respect to Plaintiff's claims under the NYLL, as they are subject to the same analysis as his claims under the FLSA and can be dismissed on that basis.").

**McCormick is ordered to show cause why the default judgment motion should not be denied and the Complaint dismissed for failing to allege a FLSA claim.** *See, e.g.*, *Quinn v. Dermatech Research, LLC*, No. 18-CV-1181, 2019 WL 1586736, at *1 (M.D. Fla. Apr. 12, 2019) (denying default judgment motion where "[Plaintiff] Quinn [was] trying to turn his breach of contract claim into an FLSA claim in order to pursue a judgment against Defendants"); *Ghosh*, 2015 WL 431807, at *3; *Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021, 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28, 2012) (recommending denial of default judgment motion where employee alleged he was not exempt but his job title and description suggested otherwise), *report and recommendation adopted*, 2012 WL 909825 (Mar. 16, 2012).

## CONCLUSION

For the reasons stated above, McCormick is ordered to show cause why her motion for default judgment should not be denied for failure to establish a FLSA claim. Any submission shall be made by **August 24, 2020**.

In the alternative, she may withdraw her motion by **August 24, 2020**, and file an Amended Complaint by **September 7, 2020** with an appropriate FLSA claim. If she files an Amended Complaint, she must file proof of service of process and pursue certificates of default only if the Defendant Company again fails to respond.

SO ORDERED.

*/s/ Sanket J. Bulsara* August 17, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

14